JOHN McMANUS *et al. vs.* ROBERT LOUDEN. .

Argued by appellant, submitted on brief by respondents, April 28, 1893.   Decided May
22, 1893.

**Custom, Evidence of, Inconclusive.**

> Evidence tending to prove a particular *custom* to treat the word "cord,"
> in the measurement of cedar posts, as comprising 256 cubic feet, *held* so
> inconclusive that the verdict of the jury to the contrary should be sus-
> tained.

Appeal by defendant, Robert Louden, from an order of the Dis-
trict Court of St. Louis County, *Charles M. Start,* J., made April
22, 1892, denying his motion for a new trial.

On August 13, 1891, the plaintiffs, John McManus, Charles Mc-
Manus and Edward McManus, made a contract in writing with
defendant, for two dollars per cord, to haul all the cedar posts as
fast as cut on section fourteen (14), T. 59, R. 4, in Cook County, and
bank the same on the shore of Lake Superior.   They performed
the contract on their part, and brought this action to recover the
unpaid balance of the price.   Plaintiffs had a verdict February 11,
1892, for $509.37.   Defendant made a motion for a new trial.
Being denied, he appeals.

*S. L. Smith* and *Cotton & Dibell,* for appellant, cited 1 Greenl. Ev.
§ 295; *Miller* v. *Stevens,* 100 Mass. 518; *Smith* v. *Wilson,* 3 Barn. &
Adol. 728; *Walker* v. *Barron,* 6 Minn. 5 08, (Gil. 353;) *Pevey* v.
*Schulenburg & Boeckler Lumber Co.,* 33 Minn. 45; *Keary* v. *Thuett,*
47 Minn. 266.

*H. S. Lord* and *John H. Norton,* for respondents.

DICKINSON, J.   By a written contract between these parties, the
plaintiffs agreed to haul the "cedar posts," to be cut on specified
tracts of land, for which the defendant agreed to pay two dollars
"per cord."   Having done the work, the plaintiffs seek by this
action to recover a part of the stipulated price, which is claimed to
have been unpaid.   The issue to which this appeal relates is as
to the number of *cords* of posts hauled, and this depends upon the

meaning of the word "cord" in the contract.    The plaintiffs claim that this word as used in the contract, has the ordinary, and well-understood meaning,—128 cubic feet.    The defendant's contention is that, in accordance with a particular *custom*, in estimating the quantity of cedar posts the word "cord" designates a cubic measurement of 256 feet.    The verdict, in favor of the plaintiffs, is to be regarded as expressing the conclusion of the jury that the evidence did not establish the existence of such a *custom;* at least, as respects the business of hauling or transporting such property.    The question now before us, on this appeal from an order refusing a new trial, is whether the evidence required a contrary conclusion as to the fact of the existence of the alleged custom.

It seems that such cedar "posts" are largely cut and sold to be sawed into blocks for street paving, and that in general the posts are about eight feet long.

Considerable evidence was introduced, going to show the existence of a particular custom, in dealing in such cedar posts in this part of the country, to regard a *cord* as comprising 256 cubic feet. But we agree with the conclusion of the learned judge, whose decision is here for review, that the proof was so inconclusive as to the existence of the alleged custom that the verdict of the jury should not be set aside.

The word *cord*, in the contract, is of common use, and in general of well-known and unvarying meaning.    Its meaning is of even mathematical certainty.    It was not sought to be shown that its common meaning did not prevail generally in this locality, but only that in the measurement of *cedar* posts it had a very different signification; being then understood as expressing the quantity of 256 cubic feet.    The proof of the particular usage was opposed to the general and ordinary meaning and use of the word.    To establish the alleged custom it was necessary that the proof should show a *uniform* use of the word, in this particular business, in a sense entirely different from its still generally prevailing signification.    This peculiar use should appear to have been so general that all persons dealing in respect to the subject must be presumed to have known, and to have contracted with reference to, that customary usage.

While the proof tended strongly to show a somewhat common practice in accordance with the defendant's claim, it did not conclusively show that the practice had been so uniform that it could be declared, notwithstanding the opinion of the jury to the contrary, that it had ripened into a custom. There was evidence reasonably tending to show that the practice or usage was of somewhat recent origin in this locality, and that it was not uniform; that the term "cord," or "single cord," was still used, even in respect to cedar posts, in its ordinary signification; the quantity of 256 cubic feet being regarded as a "double cord." It may be added, as was noticed by the court below, that the defendant's own conduct was such as to justify doubt whether he understood the word "cord" as having any other than its general meaning. If it meant 256 cubic feet, he had overpaid the plaintiffs on the contract to a considerable amount. It appeared that the plaintiffs had no knowledge of the alleged custom or usage. The question was properly for the jury.

Order affirmed.

VANDERBURGH, J., being absent by reason of sickness, did not participate.

(Opinion published 55 N. W. Rep. 139.)