BURTON v. JENNINGS.

(Circuit Court of Appeals, Second Circuit.  February 14, 1911.)

No. 139.

1. CONTRACTS (§ 176*)—CONSTRUCTION—WHEN QUESTION FOR JURY.

When a contract is couched in terms of art, it is necessary, in order to ascertain its meaning, to have recourse to those having knowledge of the art; and, if they differ as to what the words mean, the question may properly be submitted to the jury.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 1097; Dec. Dig. § 176.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CUSTOMS AND USAGES (§§ 15, 21*)—EVIDENCE TO AID CONSTRUCTION—MEANING OF TECHNICAL TERMS—QUESTIONS FOR JURY—"WANEY."

In an action on a contract by plaintiffs to deliver to defendant "200,000 feet of sound, square edge, rough, long leaf yellow pine, * * * no waney stock," the timber having been refused by defendant, evidence of a custom in the lumber trade as to the meaning of the words "no waney stock" in such contracts, and as to the percentage of inferior or waney stock which would warrant the rejection of the shipment, was admissible, and the question of the existence of the custom and of the interpretation to be placed on the technical terms used in the contract was properly submitted to the jury.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 30–33, 47; Dec. Dig. §§ 15, 21.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by Curtis M. Jennings, as sole surviving partner, etc., against James H. Burton. Judgment for plaintiff, and defendant brings error. Affirmed.

On writ of error to the Circuit Court for the Southern District of New York to review a judgment entered upon the verdict of a jury in favor of the defendant in error (plaintiff below) for $4,679.89. The action is founded upon a contract made in the spring of 1904. It was tried once before, resulting in a similar verdict. The two trials aggregated nine days. The first judgment was reversed because of an erroneous ruling of the trial judge in holding that the contract was modified by a subsequent letter of the defendant. Burton v. Berthold, 166 Fed. 416, 92 C. C. A. 168. The salient facts appear in the former opinion of this court and need not be repeated here.

John S. Berthold having died September 14, 1909, the action was continued in the name of the plaintiff as surviving partner. The parties will be referred to as they appear in the court below.

Appell & Taylor (George H. Taylor, Jr., of counsel), for plaintiff in error.

Hyland & Zabriskie (Nelson Zabriskie, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). This court decided that the contract between the parties consisted of the order inclosed in defendant's letter of April 14, 1904, and the acceptance of the order by the plaintiffs on April 19, thereafter. The relevant parts of the order are as follows:

"Quality Sound Square Edge Rough Long Leaf Yellow Pine. Price Forty & 50/100 Dollars Delvd (40 50/100 per M ft.). Point of delivery Newark, New Jersey via Penn. R. R."

Then follows a statement of the sizes of the lumber. The order concludes as follows:

"Your privilege of increasing the 12x14 & larger to any extent you may desire providing you deduct an equal amount for the 10x12 and 12x12. Ship no waney stock."

Considerable correspondence followed the acceptance of this order which it is unnecessary to consider, in view of our former decision that the contract was complete on the acceptance by the plaintiffs

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and was not modified by what took place thereafter. The subsequent correspondence may, however, be resorted to in explanation of any ambiguities in the agreement. We have, then, an agreement by which the plaintiffs promised to deliver to the defendant 200,000 *feet of sound, square edge, rough, long leaf yellow pine with no waney stock, for $40.50 per thousand feet.* The plaintiffs, who resided in St. Louis, ordered the lumber in controversy from Western mills and it was delivered as provided by the agreement. The defendant refused to accept it as not complying with the conditions of the contract. It was sold and the plaintiffs sue to recover the difference between the amount received and the contract price. Of course the construction of a contract, if its language be plain and unambiguous, is for the court, but when it is couched in terms of art, it is necessary, in order to ascertain its meaning, to have recourse to those having knowledge of the trade nomenclature. If those familiar with the business in question differ as to what the words mean, it is proper to submit the question to a jury for solution. It may be safely asserted that "sound square edge rough long leaf yellow pine not waney" conveys no very clear or definite meaning to one unfamiliar with the lumber business. Neither the court nor the jury could render an intelligent decision unless they understood what the contract meant.

It is argued by the defendant that the contract is unambiguous, that its construction was for the court and that it was error to submit to the jury questions relating to its meaning. Assuming the major premise to be correct, the conclusion naturally follows, but we think that the contract needed explanation, and, as there was a conflict as to its proper interpretation, it was for the jury to settle, in limine, the meaning of the trade terms employed. The court expressly charged that the contract was not modified by the subsequent correspondence but that, in view of the testimony as to custom, regarding which the witnesses were not in accord, he would submit to the jury the dispute as to its meaning. The question is presented by numberless exceptions but they will all be disposed of when we determine whether it was proper to introduce evidence of custom; if it were, and that evidence was conflicting there can be no doubt that it was properly submitted to the jury for solution. We think the jury were justified in finding the following facts:

First.—That the defendant's order was a very unusual one for the New York market both as to size, length and quantity of lumber and that it would be a practical impossibility to fill such an order with timber having absolutely no wane, if that term be construed to mean that each log must be absolutely square edged from one end to the other.

Second.—That as understood in the lumber trade, an order for "no waney stock" means that there is to be no excessive wane, it being impossible to avoid some wane in such an order as the one under consideration.

Third.—That where an order calls for large timber fifty-five feet in length a percentage of 11.27 of culls is reasonable.

Fourth.—That in every large order there are "culls" and "seconds," viz., pieces which do not come up to the grade called for. These

are rejected by the inspector and, if not excessive, are settled for at a two-thirds price.

Fifth.—That in the lumber business yellow pine in large timbers is divided into three grades, first; *prime*, second; *merchantable*, and third; *sound and square edge*. The latter—the grade here involved —being the lowest of the three.

Sixth.—That the lumber was not manufactured down to the exact sizes stated in the order which required that the stock should be *rough*. When so reduced much of the wane would disappear.

Seventh.—That the presence of a small amount of culls does not warrant the rejection of an entire order which has been shipped from the Northwest, the journey by rail requiring two months. In such conditions custom requires that there must be an inspection and an acceptance of the culls if only a small percentage appears, and at least the seller must be given an opportunity to substitute timber of the proper dimensions for the rejected culls. In other words, the custom of the trade does not permit an arbitrary and final repudiation of the contract in such circumstances.

The dictionary meaning of the words in controversy is as follows:

"Waney—Having a beveled edge, as the wane of a log. Same as *wane*.

"Wane—II. The beveled edge of a board sawn from a log especially noticeable in a slab-board."

The defendant contends that this is the meaning which alone is to govern. A timber not absolutely square-edged through its entire length would, therefore, be "waney."

It appears, however, that a contract to deliver a 10x12 log 55 feet in length would be complied with by delivering a 60-foot log having wane at the end provided it would show no wane when cut down to the stipulated proportions and the testimony showed many logs of this character.

We do not intend to intimate that the foregoing propositions are indisputably established, but only that the jury may have so found. Certainly the contract as so interpreted is in accordance with fair dealing and common sense. The strict unyielding construction contended for by the defendant would place the Western mill owner at the mercy of the Eastern buyer and inspector. If the inspector were a strict constructionist or dishonest, he could easily find a small amount of wane in every contract and the buyer could repudiate, leaving the mill owner remediless. It would seem that a custom such as the witnesses describe is almost a necessity to prevent the inequitable situation which would arise if a purchaser could repudiate his agreement in toto on finding waney stock, no matter how infinitesimal the amount. That the defendant was aware of a custom of this kind is made apparent by his correspondence, in which he several times alludes to it. For instance, he says:

"Culls, if any, to be received and applied on the order at two-thirds price, as *customary*."

Again,

"If the stock you have shipped me was to contain the *customary* 5 or 6 per cent. rejections there would be no question whatever about my customer receiving it."

185 F.—25

The question whether the custom contended for by the plaintiffs existed was one of fact for the jury. If they found that it existed, the contract was to be construed accordingly; if they found it did not exist, the contract was to be construed strictly, as permitting no wane whatever. We think that the trial judge did not leave the construction of the contract to the jury, but he did leave it for them to say what was the meaning of certain technical terms and whether a custom existed in the light of which the contract was to be interpreted. The jury evidently found the disputed questions in favor of the plaintiffs and consequently that, under the conditions of the contract, it was customary to accept a small percentage of culls at a two-thirds price, that in an order involving timber of unusual size, culls were to be expected and were provided for by a trade custom. They may also have found that a log showing some wane was not waney, as understood in the trade, if it could be cut down to a square-edged timber of the desired dimensions and that the amount of wane existing in the present case did not warrant a total repudiation of the contract.

The reception of the proof referred to was admissible under the complaint as explanatory of the contract alleged therein. As it did not refer to a new cause of action an amendment to the complaint was unnecessary.

We think the record shows no error requiring a third trial

The judgment is affirmed.