Paepcke-Leicht Lumber Company *v.* Talley.

Opinion delivered February 3, 1913.

1. CONTRACTS—WORDS AND PHRASES—PAROL TESTIMONY TO EXPLAIN CUSTOM AND USAGE.—While the rule is that it is the duty of the trial court to construe a written contract and declare its terms and meaning to the jury, when the contract contains words of latent ambiguity, or when technical terms are used or terms which by custom and usage are used in a sense other than their ordinary meaning, oral testimony is admissible to explain the terms or words used and the question may be submitted to the jury to determine in what sense they are used. (Page 409.)

2. CONTRACTS—EVIDENCE OF MEANING OF COMMERCIAL TERM.—When a contract for the sale and purchase of lumber provides that it shall be paid for at the rate of $14.00 per thousand feet *"board measure,"* it is competent to show that that term is a commercial term, and is understood to imply a particular meaning in commercial circles. (Page 411.)

3. CONTRACTS—MEANING OF COMMERCIAL TERM ONE FOR JURY.—When plaintiff sued defendant for breach of a contract whereby plaintiff agreed to sell and defendant agreed to buy certain lumber at the price of $14.00 per thousand feet "board measure," and the defendant contended that the term "board measure" meant cubical contents, irrespective of the dimensions of the board to be

measured, it is competent for plaintiff to show that the term is a commercial term, and that its meaning in commercial circles is different from that insisted on by defendant; and it is proper to submit to the jury the question of the meaning of the commercial term, "board measure;" and where the preponderance of the testimony shows that the meaning contended for by the plaintiff which is that there shall be no reduction in price for lumber less than one inch in thickness, and defendant refuses to pay the price stipulated in the contract, the jury is warranted in finding that defendant committed a breach of the contract. (Page 411.)

4. CONTRACT—TOTAL BREACH.—When plaintiff agreed to sell and defendant agreed to buy certain lumber, and a dispute arose between the parties as to the price to be paid, and defendant ordered only lumber of certain dimensions at prices less than those stipulated in the contract, and refused to pay the contract price therefor, he will be held to have committed a breach of the whole contract, for which he will be liable in damages. (Page 414.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; affirmed.

*William C. Gilbert, Hawthorne & Hawthorne* and *Coleman & Lewis,* for appellant.

1. The term "board measure" has a generally well understood meaning, and has for its unit the "board foot," which is "a board one foot long, one foot wide and one inch thick, but in reality is equivalent to 144 cubic inches of manufactured lumber in any form." 10 Enc. Brittanica (11 ed.), 658. It was the duty of the court to construe the contract and declare its terms to the jury, instead of submitting its interpretation to them. 77 Ark. 272; 89 Ark. 239.

2. Since the contract was plain and certain on its face, evidence of a custom was inadmissible to vary or contradict its terms. 54 Ark. 423; 100 U. S. 629; 186 Fed. 612; 2 Cromp. & J. 249; Jones on Evidence, § 465; *Id.* 462-7; 84 Ark. 389.

Where there is an irreconcilable conflict as to the existence, or as to the nature, extent or limitations of an alleged usage, it can never be enforced as one of the terms of a contract. 181 Fed. 483; 143 Fed. 949. The evidence of the alleged custom does not measure up to

the requirements of the law, because, it is unreasonable; it is not established; it was not known to the parties; it is inconsistent with the contract; it is not general and the alleged custom is too indefinite and vague and is based upon such conflicting testimony that it lacks that degree of certainty which would be required even in a written stipulation. *Supra.*

3. Giving the evidence its strongest probative force in favor of plaintiff, it still conclusively shows that there was no breach of the contract by defendant. Defendant's order for the thin stock at the quoted price, even if wrong, did not constitute a breach of the contract. 99 U. S. 560; 74 Vt. 382; 42 Atl. 1061; 147 Ill. 504, 35 N. E. 741; 12 Col. App. 75, 54 Pac. 399; 3 Page on Contracts, § 1341; L. R. 45 Ch. D., 481; 72 Fed. 244; 20 Mont. 347; 112 Ga. 366; 130 N. W. 354; 38 Ark. 179; 64 Ark. 230.

And such order did not constitute a renunciation of the contract. Hammond on Contracts, 892; 137 Fed. 308; 117 U. S. 490; 105 Fed. 324; 9 Cyc. 636; 137 Fed. 300, 308.

4. The contract was severable, and if it be conceded that appellant was bound to accept the thin stock and pay for it according to the price demanded by plaintiff, the refusal to do so was only a partial breach of the contract, and was not such breach as would entitle him to recover prospective profits which he would have earned in the event of full performance. Anson on Contracts, 363; 137 Fed. 308; 9 Ill. 319; 78 Ill. 27; 140 N. Y. 287; 84 N. W. (Mich.), 69; L. R. 9 App. Cas. 434; 26 Ark. 309-14.

*Block & Kirsch, M. P. Huddleston* and *R. P. Taylor,* for appellee.

1. The meaning of the term "board measure" was for the jury to pass upon. By the custom or usage of the trade board measure pays no attention to the thickness in lumber that is less than one inch thick. See Southworth-Stone Arithmetic, book 3, p. 113; Ray's New Higher Arithmetic, 139; Wentworth's Practical Arithmetic, 197.

A custom or usage need not be pleaded in order to admit the introduction of proof with regard to it.  85 Ark. 568; 69 Ark. 313.  There is always a question for the jury to settle when any of the words or terms of a contract have a disputed meaning, or are technical, or words of art, or by custom and usage are given a meaning other than the ordinary meaning of the words.  Wigmore on Evidence, § 2556; Page on Contracts, § 1129; 55 N. W. (Minn.), 139; 5 M. & W. 535; 22 C. C. A. 83; 58 C. C. A. 634; 49 N. E. (N. Y.), 56; 25 Atl. 138.

This contract was drawn up by appellant's representative.  If, therefore, the court had undertaken to construe its ambiguous terms, it would have been its duty to give that construction to those terms which would be most favorable to the appellee.  90 Ark. 88; *Id.* 256; 73 Ark. 338; 74 Ark. 41.

2.  That a wrongful or excessive demand under a contract is not in itself a breach of contract, is conceded, and the court so charged the jury; but, under the facts and circumstances shown in evidence, the jury were warranted in finding that there was such a renunciation of the contract as justified appellee in treating it as breached.  78 Ark. 336; 48 Minn. 113, 50 N. W. 1029; 126 S. W. (Mo.), 969; 152 Ill. 59; 178 U. S. 1; 30 C. C. A. 208.

3.  There is no ground whatever upon which to base a contention that this contract is severable; on the contrary, it is indivisible and a breach of one part goes to the whole of it.  63 Fed. 84; 115 U. S. 188.

McCULLOCH, C. J.  This is an action instituted by plaintiff, W. E. Talley, against defendant, Paepcke-Leicht Lumber Company, to recover damages for the alleged breach of a contract between the parties whereby the plaintiff agreed to sell, and the defendant agreed to buy, about 8,000,000 feet of gum lumber to be sawed from timber owned by plaintiff in Greene County, Arkansas. The plaintiff owned two large bodies of land in Greene County, the gum timber thereon being estimated to contain about 8,000,000 feet.  They entered into a written

contract of the date of June 28, 1907, for the sale and delivery of the lumber at the price of $14 ''per thousand feet, board measure, f. o. b. cars Black Walnut Corner and Marmaduke, Arkansas.'' No lumber was ever accepted under the contract, and this action is to recover the total amount of profits which plaintiff would derive from the performance of the contract, the aggregate amount of damages being laid in the sum of $29,609, specified in the complaint as follows:

First.    Failure to accept and pay for the thin
                lumber .........................$ 4,109.00
Second.  Profit lost on the sale of 1,000,000
                feet, being the difference between
                the contract price and the price at
                which it was sold................  4,000.00
Third.   Profit lost on the sale of 500,000 feet..  1,500.00
Fourth.. Profit lost on the sale of 1,000,000 feet  2,000.00
Fifth.   Profit lost on the sale of 1,000,000 feet
                of logs ........................  4,000.00
Sixth.   Profit which would have been realized
                on 3,500,000 feet of timber at Wal-
                nut Corner .....................  14,000.00

    Total...............................$29,609.00

At the date this contract was entered into there was in existence a prior contract between the same parties for the manufacture and sale of a large amount of gum lumber by plaintiff for the defendant, which contract was in course of performance, but it was agreed between them that the prior contract should be considered as fully performed when 250,000 feet of lumber should be delivered under the new contract. The contract also stipulated that the plaintiff should have the right to fill a contract which he had previously made with another concern for the sale of about 2,500,000 feet of gum lumber manufactured from one of the tracts of land.

The particular provisions of the contract bearing upon the question at issue in this litigation are as follows:

"Manufacture: It is a substantial requirement of this agreement that the lumber covered by same shall be manufactured in a good and workmanlike manner and to standard thickness to conform with instructions to be given from time to time by the second party. It being further understood that the lumber cut hereunder will be manufactured from only merchantable logs.

"Operation of Mill: It is expressly agreed that the first party shall continue the operation of said mills for the second party exclusively, when cutting gum lumber, except when prevented by the making of necessary repairs, by fire, or other casualties; it being further understood and agreed between the parties hereto that first party shall have the right to fulfil its contract for two and one-half million feet (2,500,000) of gum lumber for the Cannon Box Company, at the Marmaduke mill.

\*   \*   \*   \*   \*   \*   \*   \*   \*

"Prices: Second party is to pay to the first party for all lumber loaded and shipped hereunder the following price per thousand feet, board measure, f. o. b. cars Black Walnut Corner and Marmaduke, Arkansas:

"Log run gum (mill culls or No. 3 common out), $14.

"Advances: Second party agrees that it will, as soon as practicable after the execution of the contract, estimate the lumber contained in full and complete piles on the lumber yards of the first party, and that it will between the first and fifth of each succeeding month during the life of this agreement, estimate the lumber contained in full and complete piles, manufactured and piled by the first party since the last preceding estimate, and that it will advance to the first party on account of the purchase price of the lumber included in said piles which is to be paid for the sum of ten dollars ($10) per thousand feet; provided, however, that at or before the making of any of the said advances, first party shall execute and deliver to the second party a bill of sale covering all the lumber included in the piles estimated as aforesaid with full covenants of warranty in form satisfactory to the second party; and that the said first party shall, upon

the execution of this agreement, deliver to the second party a satisfactory lease covering the grounds to be used as lumber yards on which the lumber manufactured hereunder is to be piled, together with access thereto from the railroad spur from which the lumber is to be loaded; it being understood and agreed that said advance payments shall be deducted from proceeds of the lumber when loaded on cars and shipped.

*      *      *      *      *      *      *      *

"Inspection: It is understood that the second party will, as soon as practicable after receiving notice in writing from the first party that there is at least 100,000 feet of lumber on each yard which has been on sticks for at least ninety (90) days and is shipping dry, send an inspector to measure and inspect same with said first party, or its representative; provided, however, that the first party is to make such inspection at all times when requested by the second party, and that, if the first party shall fail so to do, the inspection of the second party thereupon made shall be final. Such inspection, whether mutual or otherwise, shall be made in accordance with the rules of the National Hardwood Lumber Association in force at this time, and shall be final in determining the amount to be paid hereunder, except as to such boards upon which the inspectors can not agree as to measurements or grade and when 30,000 feet of the latter shall have accumulated, if either party so desires, a joint written request shall be forwarded to the secretary of said association asking that an official inspector of said association be sent to measure and inspect the lumber in dispute. Said official measurement and inspection when made shall be final and binding as to the boards included therein. Expense of all official inspection shall be paid for in the first instance by the second party, and one-half the costs shall be deducted from the purchase price of the said lumber.

*      *      *      .      *      *      *      *      *

"Settlements: Settlement is to be had between the parties hereto on or about the 5th and 20th of each month

ARK.]     PAEPCKE-LEICHT LBR. CO. v. TALLEY.     407

for all lumber loaded and shipped prior to such time. Final settlement, unless otherwise mutually agreed upon, shall be had between the parties hereto when payment for the last car load shipped hereunder shall be due.''

The trial of the cause before the jury resulted in a verdict in plaintiff's favor for damages assessed in the sum of $9,998, and the defendant has appealed.

This litigation grows out of a controversy between the parties as to the proper construction of the contract concerning the basis for measuring the lumber, and that is the chief question presented for our determination.

Before any lumber was sawed under the contract, the defendant gave directions, as it had the right to do, for the lumber to be sawed in thickness less than one inch—thin lumber, as the parties termed it—and took the position that the words "board measure," as used in the contract meant actual measurement of the length, width and thickness of lumber, computing 144 cubic inches to the foot. Upon this measurement the price of the lumber, as claimed by defendant, would have been as follows:

|  | Per Thousand. |
|---|---|
| ⅜' | $ 7.00 |
| ½' | 7.00 |
| ⅝' | 10.50 |

The plaintiff, on the other hand, insisted that the words, "board measure," is a commercial term, meaning measurement of thin lumber according to length and width without regard to thickness, counting everything one inch, and under, in thickness the same. The price, therefore, according to the plaintiff's contention, would have been $14 per thousand feet for thin lumber.

The parties adhered to the respective constructions of the contract, and this litigation resulted, each alleging a breach of the contract on the part of the other.

The court submitted the issues of fact involved in the construction of the contract to the jury upon instructions some of which were requested by each party, and the jury determined the issue in favor of the plaintiff.

The court, in instructions given of its own motion, defined the issue as follows:

"The plaintiff's contention is that under the rules of this association and the custom of the trade that the dimension of thickness is unimportant except where the lumber to be measured exceeds one inch, and that all lumber under one inch is to be measured as if it was an inch, but that where the lumber exceeds one inch in thickness, its square surface was to be multiplied by its thickness. On the other hand, the defendant says that the expression 'board measure' means cubical contents without regard to the shape or dimension of the board to be measured, and that this measurement is obtained by multiplying together the three dimensions of length, breadth and thickness, and that this is true without regard to the thickness."

And on defendant's request the court gave the following instruction as to the issue of fact to be determined in construing the contract:

"If you find from the evidence that 'board measure' is a standard of measurement for determining the quantity of cubic contents of lumber, and that its unit is a 'board measure' foot, twelve inches long, twelve inches wide, and one inch thick, containing 144 cubic inches, and that 'surface measure' is a standard of measurement for determining the number of square feet in the superficial area or surface of boards or planks; and you further find from the evidence that the parties adopted the 'board measure' standard as herein defined as the basis for determining the price to be paid for the lumber covered by the contract, and intended that this standard of measurement should apply to lumber less than one inch in thickness as well as to that which was more than one inch in thickness, then you must find that the plaintiff was guilty of a breach of the contract if you find from the evidence that he refused to manufacture lumber less than an inch in thickness unless the defendant would pay for such lumber at the rate of $14 per thousand feet surface measurement as defined in this instruction."

Ordinarily it is the duty of the court, in the trial of cases, to construe a written contract and declare its terms and meaning to the jury. *McDonough* v. *Williams,* 77 Ark. 261, 272; *Mann* v. *Urquhart,* 89 Ark. 239. But where the contract contains words of latent ambiguity, or where technical terms are used or terms which, by custom and usage, are used in a sense other than the ordinary meaning of the words, oral testimony is admissible to explain the meaning of the terms or words used, and the question may be submitted to the jury to determine in what sense they were used. *Massey* v. *Dixon,* 81 Ark. 337; *Wood* v. *Kelsey,* 90 Ark. 272; 4 Wigmore on Evidence, section 2556; 2 Page on Contracts, section 1129; *McManus* v. *Louden,* 53 Minn. 339, 55 N. W. 139; *Mining Company* v. *Montana, etc., Co.,* 121 Fed. 524, 58 C. C. A. 634.

In *Wood* v. *Kelsey, supra,* we said:

"Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described."

Baron Park, in delivering his opinion as one of the judges of the court of exchequer, in the case of *Hutchinson* v. *Bowker,* 5 M. & W. 535, said:

"The law I take it to be this—that it is the duty of the court to construe all written instruments; if there are peculiar expressions used in it, which have, in particular places or trades, a known meaning attached to them, it is for the jury to say what the meaning of these expressions was, but for the court to decide what the meaning of the contract was."

Mr. Page, in his work on Contracts (section 1129) states the rule thus:

"If, on the other hand, the terms of the contract are in dispute, or it is possible that they have more than one

inference from the established facts which are relied on to show the intention of the parties, the jury must determine such facts or decide which of said inferences is the correct one. The court should in such cases submit the question of fact to the jury under proper alternative instructions as to the construction to be given in the event of each possible finding by the jury. This rule applies in written contracts where the admissible evidence is conflicting or admits of different inferences.''

Much testimony was introduced by both parties concerning the customs and usages, not only in the particular locality where this contract was to be performed, but throughout the whole territory covered by what is known as the National Hardwood Lumber Association, as to the method of measuring lumber for the purpose of ascertaining the price and as to the meaning of the term 'board measure;' but it is insisted by learned counsel for defendant that the term has a fixed meaning, which can not be controlled by proof of local custom or usage, and that even if the term is an uncertain one, there is no evidence to justify the court or jury in giving it a meaning other than according to its ordinary interpretation.

It must be readily conceded that evidence of a custom is inadmissible to vary the express terms of a contract. *Cook* v. *Hawkins*, 54 Ark. 423. And, as said by the Supreme Court of the United States in *National Bank* v. *Burkhardt*, 100 U. S. 686, 692:

''A general usage may be proved in proper cases, to remove ambiguities and uncertainties in a contract, or to annex incidents, but it can not destroy, contradict or modify what is otherwise manifest. Where the intent and meaning of the parties are clear, evidence of a usage to the contrary is irrelevant and unavailing.''

Quoting the language of Lord Lyndhurst in *Blackett* v. *Royal Insurance Company*, 2 Cromp. & J. 249:

''Usage may be admissible to explain what is doubtful; it is never admissible to contradict what is plain.''

It is equally well settled, in the language of the New York court, that:

"Every legal contract is to be interpreted in accordance with the intention of the parties making it.   And usage, when it is reasonable, uniform, well settled,· not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to form a part of the contract, and to enter into the intention of the parties, * *· * when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it."   *Walls* v. *Bailey,* 49 N. Y. 464.

Now, a literal interpretation of the term "board measure" would imply a measurement of lumber, like all other substances having the three dimensions of length, width and thickness, according to the number of cubic inches contained in the surface of one foot, that is to say, the unit of one foot should be counted as one foot long, one foot wide, and one inch thick, which is equivalent to 144 cubic inches of lumber.   But the use of that term does not necessarily imply the intention to give it its literal meaning, for it may mean only the manner in which a board is ordinarily measured, and it is subject to explanation according to the particular circumstances under which it is used.   In other words, it was competent to show that it is a commercial term and is understood to imply a particular meaning in commercial circles.   According to the great preponderance of the testimony, the custom is well-nigh universal in the lumber trade for sales to be made in accordance with the measurement contended for by the plaintiff as to lumber less than one inch in thickness, and there is some testimony to the effect that the term "board measure" is generally understood to mean the surface measurement of boards one inch, and less, in thickness.

We are of the opinion that the jury were warranted, in the light of this testimony, in finding that the term was used in a commercial sense in accordance with the meaning contended for by the plaintiff, and that the defendant committed a breach of the contract in refus-

ing to pay the price of the lumber in accordance with the terms of the contract as thus interpreted.

It is next contended that there was no breach of the contract by the defendant, and that if there was a breach at all, it was only a partial one, which does not justify the plaintiff in treating the contract as at an end and suing for damages.

With the settlement of the question as to the interpretation of the contract concerning the price of the lumber, passes out all substantial controversy as to the facts concerning the alleged breach of the. contract.   As before stated, no lumber had been sawed under the contract when the controversy arose concerning the price. The contract was entered into on June 28, 1907, and this point of difference arose in March or April, 1908, in the meantime the plaintiff being engaged in sawing under other contracts, no question about that being now made as affecting his right of recovery.   On March 24, 1908, the defendant wrote a letter to plaintiff giving sawing directions, or, as expressed in the letter, changing the sawing directions previously given.   In this letter specification is given for the sawing of all the lumber under the contract in dimensions less than one inch in thickness, the specification being for three-eighths, one-half and five-eighths of an inch in thickness.   The direction was given in the letter to manufacture the lumber of those sizes.   The contract gave the defendant the right to give directions as to the thickness and other dimensions of the lumber, and this included the right to change the directions from time to time; but it should be observed that the directions given, as above indicated, applied to all of the lumber to be manufactured unless otherwise thereafter specified.   It was not a direction to saw any particular quantity of lumber, but these directions, until changed, applied to all the lumber to be sawed.   It appears that a short time after this letter was written, the plaintiff went to Memphis, where defendant's offices were located, and something was said about prices, and the difference of opinion then arose as to the

construction of the contract, the plaintiff contending for $14 per thousand feet for the thin lumber, and the defendant contending for the lower price according to actual dimensions. On April 1, 1908, which was after the conversation in Memphis during which the controversy arose as to price, the defendant wrote to the plaintiff a letter containing the following:

"Referring to our conversation in this office with further reference to this matter, wish to advise that the following will be the basis of price on the stock manufactured, as per our instructions:

|                | Per Thousand. |
|----------------|---------------|
| ⅜'............................ | $ 7.00 |
| ½'............................ | 7.00 |
| ⅝'............................ | 10.50" |

It will be observed that in this letter no particular amount of lumber was mentioned, but these prices applied to all the lumber to be thereafter sawed. To that letter the plaintiff replied on April 4, 1908, as follows:

"I have ordered that your lumber at Walnut Corner be cut according to your last instructions so far as it applies to our contract. I think so far as price on same is concerned the contract will settle that, and as I stated to you while in your office that I shall expect $14 per thousand feet log run gum, surface measure."

The plaintiff thereafter sawed a large quantity of thin lumber, and the controversy was again renewed over the amount of advances to be made, the defendant insisting upon its construction of the contract as to the price. No other sawing directions were ever given, though, according to the undisputed evidence, the plaintiff wrote to the defendant demanding further directions after it became evident that there was an irreconcilable conflict between their contentions as to the price of thin lumber. It is plain, therefore, that, if the defendant directed the sawing of lumber at prices less than that stipulated in the contract and wrongfully insisted upon taking the lumber at those prices without giving directions for sawing lumber of dimensions about which there was no con-

troversy as to price, this constituted a breach on the part of the defendant, which authorized the recovery of damages. There is not a particle of evidence that the defendant ever gave any other sawing directions, though asked to do so by plaintiff after the controversy over the price of the thin lumber arose. Its attitude throughout the transaction was one of insistence upon performance of the contract according to its interpretation of the contract as to the price of thin lumber, and it manifested no disposition whatever to allow performance of the contract under any other interpretation.

It is earnestly insisted that the court erred in failing to declare the contract to be severable and in failing to give instructions properly submitting the question of only a partial breach of the contract, if there was any breach at all. Without going into the question of the correctness of the instructions given by the court and the refused ones which were asked by defendant on those questions, we are of the opinion that, according to the undisputed evidence, there was a total breach of the contract if, as found by the jury, the defendant was wrong in its interpretation of the contract as to the price of thin lumber. The defendant made its stand from first to last on its asserted right to have the lumber sawed in dimensions less than an inch in thickness according to prices under its interpretation of the contract. It refused to make advances on any other basis, and it failed to give any further sawing directions when requested so to do. If it was wrong in its contention as to the interpretation of the contract, its attitude throughout the whole transaction was one of refusal to perform the contract on any other terms.

We think the sole question for the determination of the jury under the evidence adduced at the trial was that which related to the interpretation of the contract, and when that was decided the case was lost to the defendant and its liability for whatever damage was sustained necessarily followed.

The testimony in the record is voluminous, and an

unusual number of instructions were requested covering every possible phase of the case, but we deem it unnecessary to discuss any of them for the reasons hereinbefore indicated.

The verdict as to the amount of damages is well sustained by the evidence, and as no prejudicial error is found, the judgment is affirmed.

WOOD, J., dissents.

SMITH, J., not participating.