BURTON v. WILSON.

Opinion delivered July 8, 1918.

BROKERS—COMMISSION FOR SALE OF LAND—CUSTOM.—Where a broker was employed to sell land at a certain price net to the vendor, oral testimony was inadmissible to prove a local custom between land owners and real estate brokers that when a tract of land is listed with a broker for a designated price per acre net to the owner the broker gets as his commission all that he sells the land for in excess of the list price; the words of the contract having a settled legal meaning which can not be altered by proof of a local custom.

Appeal from Mississippi Circuit Court, Chickasawba District; *R. H. Dudley,* Judge; affirmed.

### STATEMENT OF FACTS.

Appellant sued appellees to recover commissions alleged to be due him for selling certain real estate belonging to appellees. The facts necessary to present the issues raised by this appeal, briefly stated, are as follows:

A. O. Burton, appellant, is a real estate broker in Mississippi County, Arkansas, and had been for eight or ten years prior to the transaction involved in this suit. He had negotiated sales of lands in different parts of the county. During the fall of 1916, he went to see R. E. Lee Wilson about certain lands in Mississippi County. During their conversation Mr. Wilson gave him the description of sections 33 and 34 in Mississippi County, which belonged to himself and the other appellees, and of which he had charge. Burton asked Wilson to give him the lowest prices on these sections and Wilson replied "I want $20 an acre net to me; one-fourth cash and the balance in 1, 2 and 3 years, with interest at 6 per cent. per annum." Appellant accepted the agency for the sale of these lands, and nothing was said about the commissions which should be paid him. Appellant procured purchasers who were ready, willing and able to purchase the lands at $30 per acre. Wilson refused to make deeds to the purchasers, or to complete the sale, claiming that he had revoked appellant's authority before he found the purchasers for the land. On the other hand, evidence was adduced by appellant tending to show that he found the purchasers before his authority was revoked by Wilson. Hence this suit.

On the trial of the case appellant offered to prove by several witnesses that when an owner of real estate offered to list his lands with a real estate broker at $20 per acre net to the owner, that such language has a generally and universally accepted meaning among land owners and real estate brokers in Mississippi County,

Arkansas, and that each witness in answer to the question would have said:

"When a piece of land is listed with a broker for twenty or forty or fifty dollars an acre net to the owner, the broker gets as his commission all he sells the land for in excess of the list price. This is the universal custom between owners and brokers of real estate in this county."

The court instructed the jury that when appellant was directed to make a sale of the land for not less than $20 per acre net to appellees, this was only a limitation upon the authority of the appellant in undertaking to make a sale of the land, and that it did not, and was not intended to mean that appellant should sell the land for a price in excess of that sum, without accounting to appellees for the difference. In other words, the court told the jury that before appellant would be entitled to recover the difference between $20 and $30 per acre as a commission for making the sale, appellant would have to show by a preponderance of the evidence that there was an express agreement by Wilson to pay appellant this difference as his commission. The court submitted to the jury also the question of whether or not appellant had procured purchasers ready, willing and able to purchase the land before Wilson revoked his authority, and told the jury that if it found for appellant in these respects he would be entitled to a fair and reasonable compensation for the services rendered by him. It was agreed between the parties, (and the court so told the jury), that if it should find for the appellant a commission of 5 per cent. would be a fair and reasonable compensation.

The jury found for the appellant in the sum of $960, and the case is here on appeal.

*A. G. Little* and *P. A. Lasley,* for appellant.

1. Appellant was entitled, as his commission, to all he sold the land for in excess of $20 an acre. The contract was a parol one, "at $20 net to Lee Wilson & Co.," and the court erred in refusing to allow appellant

to prove by witnesses that the universal custom in Mississippi county was, between land owners and real estate brokers, that when land was listed at a designated price per acre net to the owner the broker was entitled to all the land sells for in excess of the list price. Oral testimony was admissible to explain the meaning of the words used and it should be submitted to the jury to determine in what sense they were used. 106 Ark. 409; 113 *Id.* 330; *Ib.* 560; 23 How. 63; 69 Ark. 313. The cases in 70 Ark. 56, and 126 *Id.* 63, are easily distinguished from this.

2. The parol testimony as to the custom was competent. 3 Jones on Ev. 239-240; Wigmore on Ev. 57; 15 Am. Rep. 234; 2 Elliott on Ev. par. 1723; 118 Mo. 548.

3. In construing a contract the object is to arrive at the intention of the parties as shown by all the circumstances surrounding the making of the contract, the situation and relation of the parties and the sense in which the words were used. 105 Ark. 421; 114 *Id.* 416. The parties themselves interpreted the contract to mean that appellant was entitled to all in excess of $20 per acre. 114 Ark. 415. The court erred in its instructions. 84 Ark. 466; Mechem on Ag., par. 966; 114 Ark. 415, and authorities, *supra;* 100 U. S. 692.

*Chas. T. Coleman,* for appellee.

1. There is no dispute as to the language used. Not one word was said about commissions. Wilson only stated his lowest price net. So there is no controversy about the meaning of the contract which the law supplies from the language used, that is to sell at the best price obtainable, not less than $20 per acre. A reasonable compensation is implied. Similar contracts are construed in 70 Ark. 56; 76 *Id.* 395; 126 *Id.* 61; 130 Ga. 713. See also Gross on Real Estate Brokers, § 215.

2. Plaintiff's testimony that though nothing was said about commissions he *understood* that he was to have all over the lowest price. This was clearly inadmissible and properly excluded. 20 How. 447; 17 Wall.

(U. S.) 19, 28; 28 Fed. 639, 648; 1 Elliott on Cont., p. 4; 3 Jones on Ev., § 456.

3. Proof of a local custom changing, varying or altering a contract, or its legal meaning, was not admissible. 55 Ark. 347; 10 *Id.* 9; 24 *Id.* 210; 50 *Id.* 393; 2 Elliott on Cont., 1628, 1688; 64 Ark. 650; Tiffany on Agency, 422-3-4; Remhart on Agency, 244; 106 Ark. 410; 111 *Id.* 263; 25 N. E. 901; 5 Wall. 663; 1 Lawson on Cont., § 125; 100 U. S. 686; 1 E. D. Smith (N. Y.) 619; 201 Mass. 312; Clarke's Brown on Usages and Customs, § 57; Gross on Real Estate Brokers, § 216.

4. The instructions were correct. 70 Ark. 56; 126 *Id.* 61; 106 *Id.* 536; 84 *Id.* 462; 102 *Id.* 203; 204 U. S. 226; 87 Fed. 167.

5. The court ought to hold that Burton's contract was such as to forfeit all right to commissions. 76 Ark. 395; 126 *Id.* 61; Walker on Real Estate Agency, § 412. He made a false statement to his principal.

HART, J., (after stating the facts). The chief reliance of counsel for appellant for a reversal of the judgment is, that the court erred in refusing to allow him to prove by witnesses that the universal custom between land owners and real estate brokers in Mississippi county, is, that when a tract of land is listed with a broker for a designated price per acre net to the owner, the broker gets as his commission all that he sells the land for in excess of the list price. Counsel for appellant admit that generally it is the duty of the court to construe a written contract and declare its terms and meaning to the jury. But they invoke the rule that where commercial terms are used which by custom are used in a sense other than the ordinary meaning of the words, oral testimony is admissible to explain the meaning of the words used and that it should be submitted to the jury to determine in what sense they were used. They rely upon the principles of law decided in *Paepcke-Leicht Lbr. Co.* v. *Talley*, 106 Ark. 400. In that case the parties entered into a written contract for the sale and delivery of lumber at

a designated price per thousand feet "board measure." The court held that it was competent to show by parol evidence that the phrase "board measure" was a commercial term, and that it was the well-nigh universal custom in the lumber trade for sales to be made in accordance with its commercial meaning. There is no difficulty of this kind in the contract here. The words have a settled and definite legal meaning. In *Boysen* v. *Robertson,* 70 Ark. 56, the court in construing a similar contract held that the words used were only a limitation upon the power of the agent to sell and that it was still his duty to sell the land for the highest price obtainable, and to account to his principal for the proceeds, less a compensation not greater than the excess of the purchase money over the designated price per acre net, and at the same time not exceeding a reasonable compensation. This rule was reaffirmed in the later case of *Bennett* v. *Thompson,* 126 Ark. 61. It was there said that the duty rests upon a real estate broker, the same as upon any other agent, to make disclosure to his principal of the terms of a negotiation so that the principal may act advisedly in determining whether or not the proposal is satisfactory. The court held that the broker may make a contract whereby he will be entitled to the difference between the price the seller agrees to accept and the amount the purchaser agrees to pay, regardless of what that amount is; but that such a contract must be plainly expressed in order to relieve the broker of the duty he owes to his principal to make a full disclosure concerning the terms of the negotiation. In the case above cited the words under consideration had a meaning peculiar to the lumber trade and that meaning was understood by all lumber men. Here the words used in the contract had a well defined legal meaning, and, in the absence of any showing in the contract that the parties intended them to have a different meaning, they must be presumed to have used them in their legal meaning. In all cases where evidence of custom or usage is received the rule

must be taken with the qualification that the evidence be not repugnant to or inconsistent with the contract. No usage or custom can be incorporated into a contract which is inconsistent with its terms. It is clear that local usages or customs can not defeat the express terms of a contract; nor can they contravene settled principles of law. This principle is clearly recognized in the case above cited as well as by other opinions of this court. Although usage may be resorted to to explain the meaning of a commercial term, it can never be received to contradict the express terms of a contract, nor to give words a meaning different from their settled legal interpretation. Hence the court did not err in refusing the offered testimony.

The contract under consideration does not fix what compensation appellant was to receive for selling the land. It was agreed by the parties that, in the absence of a contract to the contrary, 5 per cent. is a reasonable commission for the sale of the land. The jury found for appellant and fixed his compensation at $960. This finding eliminates from our consideration the other assignments of error, for the reason that the finding of the jury being in favor of appellant, he could not be prejudiced by the instructions given to the jury.

It follows that the judgment must be affirmed.