### CRUCE v. PIERCE OIL CORPORATION et al.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1922.)

No. 5942.

1. Mines and minerals ⬤⇒79(3)—Oil lease held to require maximum royalty only if each well produced stated quantity.

An oil lease giving lessor one-sixth of the oil produced when the wells produce 50 barrels per day or more, and when they produce less than 50 barrels per day each then one-eighth of the oil produced, entitles lessor to royalty of one-sixth only in case each well on the premises produces the stated quantity of oil; the one-eighth royalty not being limited to cases where each well produces less than that quantity.

2. Mines and minerals ⬤⇒79(5)—Custom of measuring oil from small wells held to sustain lessee's construction of the lease as to amount of royalty.

The universal custom in an oil field of connecting several wells, which were relatively small producers, to one storage tank, instead of constructing a separate tank for each well, as the result of which the production of each well could not be measured, but only the aggregate production, shows that an oil lease, which was ambiguous as to whether the maximum royalty rate was payable only in the event each well pro-

duced more than the stated quantity or whether a lesser rate was payable only if each well produced less than the stated quantity, should be given the former construction.

3. **Customs and usages ⚙—10—General custom becomes part of the contract.**

A general custom or usage is the common law itself and becomes a part of a contract.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by Lee Cruce against the Pierce Oil Corporation, in which the defendant paid the amount in dispute into court, and asked that the Kewanee Oil & Gas Company be made a party defendant. Judgment for defendants, and plaintiff brings error. Affirmed.

C. B. Stuart, of Oklahoma City, Okl. (J. F. Sharp and M. K. Cruce, both of Oklahoma City, Okl., on the brief), for plaintiff in error.

A. A. Davidson, of Tulsa, Okl. (Preston C. West, Roger S. Sherman, and Grey Moore, all of Tulsa, Okl., on the brief), for defendants in error.

Before CARLAND and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The suit was originally instituted in a state court against the defendant Pierce Oil Corporation, the purchaser of and the owner of the pipe line to which the oil was delivered. The corporation was to pay to the plaintiff the royalties he was entitled to under the lease. The oil was delivered to it merely as a purchaser from the Kewanee Oil & Gas Company (hereafter referred to as the Kewanee Company), the lessee of the plaintiff. The Pierce Oil Corporation filed an answer in the nature of an interplea, setting up that fact, and that it held the difference between the sum paid to the plaintiff and that claimed by him, as a stakeholder for the plaintiff and the Kewanee Company, brought the money into court and asked that the Kewanee Company be made a party defendant, and it be discharged. The Kewanee Company thereupon was made a defendant in the cause, entered its appearance, and upon its petition the cause was removed to the District Court of the United States. There was a stipulation in writing waiving a jury, and after a hearing the court rendered judgment for the defendants.

The royalties on the basis of one-eighth had been paid to the plaintiff by the Pierce Corporation, who accepted it under protest, and an agreement that the acceptance was without prejudice to his claim for the difference between the one-eighth and one-sixth royalty, he claiming to be entitled to a royalty of one-sixth. He based his claim on the ground that a correct construction of the lease entitled him to it, unless each of the wells on the leased ground produced less than 50 barrels of oil daily, while the contention of the defendant was that under the lease the plaintiff was only entitled to a royalty of one-eighth of the oil produced, unless each of the wells produced 50 barrels or more daily. The provision in the lease material to a determination of this cause is:

"To deliver to the credit of the first party, his heirs or assigns, free of cost in the pipe line to which it may connect its wells, the equal one-sixth (1/6) part of all oil produced and saved from the leased premises when said wells produce *each* per day of twenty-four hours fifty (50) barrels or more, and when said wells produce less than fifty (50) barrels per day *each* then and in that event the lessee shall deliver in said pipe line the equal one-eighth (1/8) part of all oil produced and saved, and party of the second part agrees to pay the first party a sum of money equal to one-sixth (1/6) of the net proceeds arising from the sale of gas from each and every well on said premises when the same is sold from the lands herein leased."

The court found and "concluded that the lease contract is not ambiguous, and that the plain construction of it, without extrinsic evidence, is that the plaintiff is not entitled to recover, as the test or standard upon which the price of the oil was to be paid is clear by the terms of the contract, viz. that in order to entitle the plaintiff to a one-sixth royalty each of the wells must have reached the capacity of fifty barrels or more daily and that there is no claim that they had that capacity," and thereupon rendered judgment for defendants.

There were 10 wells on the 160 acres, constituting the leased premises. The undisputed evidence shows that during the entire time involved in this controversy the 10 wells on the leased premises produced daily considerably less than 500 barrels of oil, nor is there any evidence that any of the wells produced as much as 50 barrels on any one day.

[1] The contention of the plaintiff in the court below, as well as this court, is set out in the assignment of error as follows:

"The court erred in rendering judgment in favor of the defendants and in overruling the motion of plaintiff to find generally in his favor upon the law for the reason that the lease contract sued upon, when rightly construed, entitled the plaintiff to a judgment for the one-sixth royalty, instead of a one-eighth royalty."

The only instruction requested by plaintiff, which was refused and excepted to, was that:

"The court to declare the law with reference to the lease contract introduced in evidence in his favor to the effect that said contract is not ambiguous and sustained the plaintiff's contention in this case; and we also pray the court that, in the event said contract may be held ambiguous by the Circuit Court of Appeals to which this case will be appealed, to declare the facts in this case in favor of the plaintiff."

In the brief of the learned counsel for plaintiff, his first statement is headed:

"The court was correct in holding the contract unambiguous, but fell into error in attaching to it the particular significance and meaning which it did."

We agree with the construction of this clause by the learned trial judge, that in order to entitle the plaintiff, under the lease, to a royalty of one-sixth of the oil produced, *each* well must produce 50 barrels or more daily.

[2] But, if we should be in error as to this construction of the lease, and the terms of the contract are held to be ambiguous, the judgment is correct. The evidence shows that, as pleaded in the answer, it is the universal custom and usage in that field, a usage well known to all oil producers, lessors, and lessees in that field, that if there a num-

ber of small producing wells on the leased premises, to conduct the oil from the mouths of all the wells to such number of receiving tanks as may be necessary for temporary storage of the production until it can all be run into the pipe line of the purchaser, and that only the aggregate daily quantity of oil turned into such tanks as a whole can be ascertained. That it is a reasonable custom is beyond question, for otherwise the lessee would be required to erect a separate tank, with a measuring gauge, for each producing well, no matter how small the production of the well may be. In the instant case the undisputed evidence is that the entire daily production of the 10 wells on the leased premises was considerably less than 500 barrels, and the expense of erecting separate tanks for each of them would be prohibitive. Nor would the purchaser, the owner of the pipe line, be willing to incur the expense necessary to keep 10 separate accounts, which would be necessary in order to calculate the amounts to be paid to the lessors, regardless of the fact that some wells may produce only a few barrels daily, if such a custom did not prevail.

[3] A general custom or usage is the common law itself and becomes a part of a contract. Robinson v. United States, 13 Wall. (80 U. S.) 363, 20 L. Ed. 653; Hostetter v. Park, 137 U. S. 30, 39, 11 Sup. Ct. 1, 34 L. Ed. 568; St. Paul F. & M. Ins. Co. v. Balfour, 168 Fed. 212, 93 C. C. A. 498; Burton v. Jennings, 185 Fed. 382, 107 C. C. A. 438; Hartford, etc., Ins. Co. v. Pabst Brewing Co., 201 Fed. 617, 626, 120 C. C. A. 45, Ann. Cas. 1915A, 637; Eames v. Claflin Co., 239 Fed. 631, 634, 152 C. C. A. 465; Walls v. Bailey, 49 N. Y. 471, 10 Am. Rep. 407; Turner v. Huff, 46 Ark. 222, 55 Am. Rep. 580; Paepcke-Leicht Lumber Co. v. Talley, 106 Ark. 400, 153 S. W. 833. In conformity with that custom and usage the defendant erected only one tank for the 10 wells, into which the aggregate daily production of all the wells was conducted. It was here gauged and then delivered in the pipe line of the purchaser, the Pierce Corporation, who retained for payment of the royalties the amounts due the plaintiff, and paid them to him semimonthly as required by the terms of the lease. There was only one way to determine the product of the wells, and that was by averaging the oil delivered as one-tenth for each well.

So, whether the construction placed on the terms of the lease by the trial judge, or the custom and usage of that field, is right, the plaintiff has received all he is entitled to, and the judgment is right, and therefore affirmed.

STONE, Circuit Judge, concurs in the result reached, basing such concurrence on the ground of the failure of the evidence to show that plaintiff in error is entitled to recover.