## BATTON *v.* JONES.

## Opinion delivered February 23, 1925.

1. CUSTOMS AND USAGES—ADMISSIBILITY TO DEFEAT C O N T R A C T.— Usages and customs cannot be invoked to defeat the express terms of a written contract, being applicable only where the contract is silent or its terms ambiguous.

2. CUSTOMS AND USAGES—ADMISSIBILITY OF LOCAL CUSTOM.—A local custom may be proved to remove ambiguities and uncertainties in a contract or to explain what is doubtful.

3. NEW TRIAL—CONCLUSIVENESS OF VERDICT.—While it is the duty of the trial court to set aside a verdict considered to be contrary to the weight of evidence, the Supreme Court cannot set aside a verdict supported by evidence of a substantial nature.

4. EVIDENCE—COMPETENCY.—Where plaintiff, in an action for rent, proved a custom that in case part of the land is overflowed the tenant may pay either the stipulated money rent or a part of the crop as rent, the defendant, in case of an overflow, may prove how many bales of cotton were raised on the land not overflowed, on the issue as to the value of the crop.

5. EVIDENCE—CONTRADICTION OF WRITTEN CONTRACT.—Where the parties to a contract define certain words therein by language whose meaning is not doubtful, parol evidence is inadmissible to give the words a different meaning.

6. CUSTOMS AND USAGES—EXPLANATION OF CONTRACT.—Parol evidence of the customary local meaning of words "subject to the usual overflow clause," in a farm lease which did not define them, was admissible, but it would be incompetent to show by parol evidence what the parties defined these words to mean in a prior contract.

Appeal from Little River Circuit Court, *B. E. Isbell,* Judge; affirmed.

STATEMENT OF FACTS.

Lon T. Jones sued E. B. Batton to recover $300 alleged to be due for the rent of his farm for the year 1923.

According to the testimony of Lon T. Jones, he rented his farm to E. B. Batton for the year 1923. There were estimated to be eighty or ninety acres in cultivation. The contract was in writing, and provided that Batton should pay Jones $300 for the rent of the tract of land. The contract also contained a clause as follows: "It being understood and agreed that this contract shall be subject to the usual overflow clause, and no agreement not contained herein shall be binding on either party hereto." The contract provided that the rent should become due October 1, 1923, and no part of it has been paid.

According to the testimony of E. B. Batton, there were about eighty-five acres in cultivation, and all of the land overflowed in the spring of 1923, except about thirty-five acres. He did not grow any crops on the land that overflowed. After the water dried out, it was too late to plant a crop. Batton grew twelve bales of cotton and a remnant upon that part of the land which did not overflow. It was shown by the defendant that the words, "subject to the usual overflow clause," meant that, whenever land was rented for a stipulated amount in cash, and part of the land overflowed, it was customary to pay as rent one-fourth of whatever crop that was grown on the overflowed land, and to pay the average price per acre on the land that did not overflow. To illustrate: If one-half of the land in controversy was overflowed during the year 1923, and the overflowed part was again planted, the tenant would pay one-fourth of the cotton, or a third of the corn that might be produced on the overflowed land. If it was too late to plant a crop on it, he would not pay rent on the overflowed land, and would pay at the average

price per acre in cash for the land that was not overflowed.

On the other hand, according to the testimony of the plaintiff, the words, "subject to the usual overflow clause," meant that, if any part of the land overflowed, the tenant had the right to pay the stipulated money rent provided in the contract or to pay one-fourth of the cotton and one-third of the corn raised by him, as rent. The value of one-fourth of the cotton raised by Batton on the rented premises during the year 1923 amounted to more than $300.

The jury returned a verdict in favor of the plaintiff for $300, and to reverse the judgment rendered, the defendant has duly prosecuted an appeal to this court.

*June R. Morrell,* for appellant.

Contracts of doubtful purport should be construed most strongly against the party preparing them. 97 Ark. 522; 105 Ark. 518; 112 Ark. 1. Instruction No. 3 was error; also the testimony which left the jury to believe that appellant had made an enormous profit. If this testimony was admissible, then appellant should have been permitted to prove the expense and loss that he suffered by reason of the overflow. Issues not in the pleadings should not be submitted to the jury and where proof is offered on matters not raised by the pleadings and objections are made, the pleadings are not to be treated as amended. 41 Ark. 394; 28 Ark. 500.

*Shaver, Shaver & Williams,* for appellee.

The contract is controlling and cannot be varied by parol testimony. 102 Ark. 578.

HART, J., (after stating the facts). It is earnestly insisted by counsel for the defendant that the judgment should be reversed, because the weight of the evidence showed that, under the custom of the country, the words, "subject to the usual overflow clause," meant that, in case the land was overflowed, the tenant would pay a part of the crop for rent on the overflowed land and the average price per acre in cash for the land that was not overflowed.

It does not make any difference where the weight of the evidence on this point was. It is sufficient to say that there was testimony on the part of the plaintiff tending to show that the words referred to meant that, in case of overflow, the tenant had the option to pay the stipulated rent in cash, or a part of the crops raised by him on the whole place. Of course it is well settled that usages and customs of trade cannot be invoked to defeat the express terms of a written contract, being applicable only where the contract is silent or where its terms are ambiguous. *Southern Coal Co.* v. *Searcy Transfer Co.,* 152 Ark. 471.

It is equally well settled, by the authorities cited in the case last mentioned, that a local custom may be proved in proper cases to remove ambiguities and uncertainties in a contract. Proof of a custom is also admissible to explain what is doubtful. Therefore it was proper in the case before us to receive testimony as to the meaning of the words, "subject to the usual overflow clause."

Each party introduced evidence as to what was the meaning of these words in the particular locality where the land rented was situated, and the court submitted to the jury the question under proper instructions on the subject. The jury returned a verdict in favor of the plaintiff, thereby saying that it believed the evidence for the plaintiff on this point.

As we have frequently pointed out, under our system of practice it is the duty of a trial court to set aside a verdict which is considered by it to be contrary to the weight of the evidence. The reason is that the circuit judge hears the testimony of the witnesses, and has an equal opportunity with the jury to weigh their testimony. On the other hand, no such opportunity is afforded us, and this court cannot set aside the verdict of a jury where there is any evidence of a substantial nature to support it. *St. Louis Southwestern Ry. Co.* v. *Ellenwood,* 123 Ark. 428.

Again, it is insisted that the court erred in admitting the testimony of witnesses to the effect that the tenant raised twelve bales of cotton on the land that was not overflowed.

This testimony was competent. According to the evidence for the plaintiff, where land is rented for a stipulated price in money, and a part of the land is overflowed, the tenant has the option to pay the stipulated money rent, or a part of the crop as rent. Therefore it was competent to prove how many bales of cotton were raised on the land that did not overflow, in order that the jury might determine the value of the crop.

Again, it is insisted that the court erred in excluding from the jury certain testimony offered by the defendant. It appears that the defendant had rented the same land from the plaintiff the year before, and had inserted a provision in writing defining what was meant by the words, "subject to the usual overflow clause." There was no error in excluding this testimony. Where the parties defined these words by particular language whose meaning was not doubtful, they fixed their rights under the contract, and parol evidence could not be introduced to give the words a different meaning from those agreed upon by the parties.

In the case before us they used the words, "subject to the usual overflow clause," without defining them. It cannot be said that, because the parties had defined these words in a contract entered into between them the year before, this meaning should be given to a subsequent contract where the words were not defined. By omitting to define the words in the contract, it is evident that the parties meant that they should be given their customary meaning in that particular locality. Therefore it was competent to show by parol evidence what these words meant in that particular locality, and it would be incompetent to show that these words meant what the parties had defined them to mean in a previous contract. The definition given the words in the previous contract made it definite and certain, and the absence

of such definition in the contract before us rendered the words ambiguous, so that parol evidence could be resorted to to determine their meaning.

It follows that the judgment must be affirmed.