OZARK-BADGER COMPANY *v.* ROBERTS.

Opinion delivered November 1, 1926.

1. CUSTOMS AND USAGES—VARYING TERMS OF CONTRACT.—In a suit on a promissory note, in which the maker counterclaimed for excessive credits taken by the payee while manager of defendant lumber company's mill, admission of testimony that it was customary for lumber companies to allow managers their expenses in attending conventions of lumbermen and for entertainment of prospective customers *held* error where a written contract between the parties defined the duties of the manager and fixed his salary, without allowing him an expense account for entertaining customers.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.—A principal can be bound only by the authorized acts of an agent.

3. CUSTOMS AND USAGES—VARYING TERMS OF CONTRACT.—Where an agency is created by contract, the nature and extent of the agent's authority must be ascertained from the contract itself, and, unless the language of the contract is technical or ambiguous, it cannot be extended by parol proof as to a custom.

4. MASTER AND SERVANT—EXPENSES OF BUSINESS TRIPS.—The manager of a lumber company was authorized to charge the expenses of a business trip to the company.

5. CORPORATIONS—ESTOPPEL TO DENY AGENT'S AUTHORITY.—Officers of a lumber company not being under duty to examine its books to ascertain whether its manager had been guilty of wrongdoing, the company was not precluded from recovering the amount of improper traveling expenses because they were set out in such books.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; reversed.

STATEMENT BY THE COURT.

W. T. Roberts sued the Ozark-Badger Company to recover the sum of $668 alleged to be due him on a promissory note executed to him by the defendant.

The Ozark-Badger Company filed an answer, in which it admitted the execution of the note and the balance due and unpaid on it in the amount sued for. By way of counterclaim, it alleged that Roberts was manager of the sawmill business of the Ozark-Badger Company, a corporation, at Wilmar, Arkansas, during the years 1922-23, and until his resignation on the 13th day of March, 1924. It alleged that the manager was in charge of all the books of the defendant during this period of time, and that he wrongfully and illegally took credit for the sum of $1,175.52 on his expense account. The statements are set out specifically in the counterclaim, and the defendant asked judgment over and against the plaintiff in the sum of $475.52. On the trial of the case the note was introduced in evidence, showing a balance due on it in the amount sued for.

The record shows that W. T. Roberts was employed as general manager of the Ozark-Badger Company at Wilmar, Arkansas, on January 4, 1922, and continued as such manager until the 13th day of March, 1924. A

written contract was entered into between the parties on January 4, 1922, which defined Roberts' duties and salary as such general manager. His original salary was $300 per month, which was increased to $333.33 per month about the first of February, 1923.

The president and the secretary of the Ozark-Badger Company resided at Stoughton, Wisconsin, and, at stated intervals, came to Wilmar, but never made any examination of the books of the company. They did not know what the statements in the expense account were for. On one occasion, the president of the company met Roberts in the city of Chicago, attending a meeting of the rules committee of the National Hardwood Lumber Association, and Roberts stated that the association was paying the expense of the trip. The company made no objection to Roberts attending these meetings, but his attendance was not a part of his duties as manager of the company, and was not of any particular benefit to it. Roberts sent in a report showing the total general expenses of the operation of the sawmill, but the company did not know that the items involved in the suit had been charged against the company until the president came to Wilmar to make a final settlement with Roberts after his resignation.

Frank Seymour, assistant manager of the Gates Lumber Company at Wilmar, Arkansas, was a witness for the plaintiff, Roberts. Over the objections of the defendant company, he was permitted to testify that he charged up personal expenses to the Gates Lumber Company, which were paid by it, and that it was the custom of these lumber companies to allow their managers to spend a reasonable amount of money in entertaining prospective customers while away from home, and that they were allowed a lump sum for whatever they spent in railroad fare, hotel bills and suppers for prospective customers while in attendance at lumber association meetings and the like.

W. T. Roberts was a witness for himself. According to his testimony, he never kept an itemized statement of

his expense account involved in this lawsuit, because it was not the custom for general managers to keep such itemized statements. In a general way the expenses involved in the suit were for railroad fare, hotel bills and suppers and entertainment for persons with whom they did business and with whom they contemplated doing business. A part of the expenses was for railroad fare and hotel bills in going to Little Rock and Conway for the purpose of selling lumber and transacting other business for the company.

The jury returned a verdict in favor of W. T. Roberts in the sum of $617.48, and, to reverse the judgment rendered upon the verdict, the defendant, Ozark-Badger Company, has duly prosecuted an appeal to this court.

*Williamson & Williamson,* for appellant.

*Henry & Harris,* for appellee.

HART, J., (after stating the facts). The first assignment of error is that the court erred· in allowing testimony to be introduced to the effect that it was customary for lumber companies like the Ozark-Badger Company to allow their general managers to spend reasonable amounts of money in attending the conventions of lumber associations and for the entertainment of.prospective customers while there. We think the court erred in admitting this testimony. There was a written contract between the parties, which defined the duties of the general manager and fixed his salary at a definite sum, to be paid monthly. Nothing whatever was said about allowing him an expense account for the purpose of entertaining prospective customers.

It is a fundamental proposition of law that a person can only be bound by the authorized acts of his agent. Where an agency is created by contract, the nature and extent of the authority of the agent must be ascertained from the contract itself, except where it is ambiguous,. and cannot be extended by parol evidence of the usage of agents of other companies. In other words, where there is no ambiguity in the language of the contract,

evidence of usage is not admissible in respect to what the contract expressly declares. Evidence of custom or usage is admissible "to show the intention of the parties in all those particulars which are not expressed in the contract, or which are expressed in unusual or technical terms." 17 C. J. 516; *Kimball* v. *Brawner,* 47 Mo. 398; *Porter* v. *Patterson,* 15 Penn. St. 229; *Patridge* v. *The Insurance Company,* 15 Wall. (U. S.) 573; and Greenleaf on Evidence, 15th ed., §§ 292, 294.

This court has recognized the general rule that, where the language of a contract is neither technical nor ambiguous, proof of usage in respect to the contract is not needed as an aid in its construction, and its admissibility would amount to establishing the principle that a custom may add to or vary a contract. *Runyan* v. *Runyan,* 101 Ark. 353, 142 S. W. 519; *In re Paepcke-Leicht Lumber Co.,* 106 Ark. 400, 153 S. W. 833; and *Batton* v. *Jones,* 167 Ark. 478, 268 S. W. 857.

We have not copied the contract here, and do not deem it necessary to do so. It is sufficient to say that it employed Roberts as general manager of the Ozark-Badger Company at a stated salary, payable monthly, and defined his duties. There is nothing whatever in its terms from which it might be inferred that the company intended that Roberts should attend meetings of lumber associations, and charge his expenses in going there and entertaining prospective customers to the company. There being no ambiguity in the language of the contract, evidence of the usage of other lumber companies situated in the same locality, as to the allowance of like expenses to their agents, was not admissible.

In this connection it may be stated that Roberts, as general manager of the company, would have the authority to send an employee of the company to Little Rock and to other nearby places for the purpose of selling lumber and transacting other business for the company, and allowing them the expenses of the trip, such as railroad fare and hotel bills. If Roberts had the authority to delegate this duty to another employee and to charge

the expenses of the trip to the company, he could perform the same services himself and charge his expenses to the company.

The court told the jury that, in the management and control of the plant of the company, Roberts had the right to spend money to further the interests of the company, and that he might include in his expense account railroad fare, hotel bills, and the cost of entertaining customers while attending the meetings of lumber associations in Chicago. Under the principles above announced, such instructions were erroneous and necessarily prejudicial to the rights of the company, and therefore call for a reversal of the judgment.

Finally, it is insisted by counsel for Roberts that the company is precluded from recovering these amounts, although they are illegal. This contention is predicated upon the fact that Roberts charged them in his expense account on the books of the company and that the president and the secretary of the company had access to the books of the company when they visited the mill plant, and might have discovered these charges if they had examined the books. In answer to this, it is sufficient to say that the president and the secretary were not required to examine the books for the purpose of ascertaining whether or not Roberts had been guilty of wrong-doing in his operation of the mill and had charged up illegal expenses to the company. In this connection, it will be remembered that both the president and the secretary of the company testified that they did not know anything about Roberts having charged the contested statements as proper expenses upon the books of the company until the president went to Wilmar, after Roberts had resigned, for the purpose of settling with him.

For the errors in the admission of testimony and in instructing the jury, as indicated in the opinion, the judgment must be reversed, and the cause remanded for a new trial.