CLIFFORD *v.* WALKER.

Opinion delivered December 9, 1929.

594

*Carmichael & Hendricks*, for appellant.
*Cockrill & Armistead*, for appellee.

HART, C. J., (after stating the facts). Where the president or other officer of a corporation performs services not within the scope of his duties as an officer, for instance, that of general manager, under circumstances authorizing an inference that he is to be paid therefor, he is entitled to compensation on an implied contract. *Mt. Nebo Anthracite Coal Co.* v. *Martin*, 86 Ark. 608, 111 S. W. 1002, 112 S. W. 882; *Red Bud Realty Co.* v. *South*, 96 Ark. 281, 131 S. W. 340; *Corning Custom Gin Co.* v. *Oliver*, 171 Ark. 175, 283 S. W. 977; and *Fitzgerald & Mallory Construction Co.* v. *Fitzgerald*, 137 U. S. 98, 11 S. Ct. 36; *Corinne Mill, Canal & Stock Co.* v. *Toponce*, 152 U. S. 405, 14 S. Ct. 632.

In the Red Bud Realty Company case the court said that, in considering whether or not there was an implied contract to pay the president of a corporation, the nature of the corporation and its business, the character and extent of the services, the value thereof, and all other attendant circumstances, must be considered. The court further stated that, in determining the matter, it would consider whether or not the services were rendered under circumstances tending to show that it was understood or that it was intended that the services were to be paid for.

It is conceded that the services were outside of Clifford's duties as president and director, and that the services of a general manager of the corporation were worth $400 per month.

This brings us to a consideration of whether the services for the first eighteen months of the business were

rendered under such circumstances as to raise an implied promise on the part of the corporation to pay Clifford a salary as general manager. With reference to this question of fact, it may be said that Clifford organized the corporation, and owned substantially all its stock. The shares were of the par value of $25 each. There was a paid-up capital of about $44,000. Clifford owned all of it except $2,500, sold to Burns, to be paid out monthly, and one share which was owned by Whitten to enable him to qualify as a director. Burns and Whitten were employed by Clifford to help in running the business. Clifford had entire charge of the business, and told Burns that he did not mean to charge the corporation with any salary for himself until he got the business on a paying basis. Clifford said he had other means out of which to live until the corporation was placed on a paying basis. The fact that Clifford, who had charge of the books, did not charge the corporation with any salary for himself for the first eighteen months, and during that time sent out financial statements to the creditors of the corporation which did not contain any salary charge for himself, tends strongly to show that the claim for back salary was an afterthought.

Under all the circumstances, we cannot say that the chancery court erred in finding that there was no implied contract to pay Clifford for his services as general manager for the first eighteen months; and in this connection it may be stated that no express contract is claimed. We also think that the chancery court properly denied the assignee of the corporation the right to recover on his cross-complaint. Clifford denied that he was indebted to the corporation, and the chancery court was justified in finding that his testimony in this respect was not overcome by that of appellee.

Therefore the decree of the chancery court will be affirmed.