MURDOCK *v.* REYNOLDS.

Opinion delivered December 23, 1929.

*Jno. E. Harris* and *Compere & Compere,* for appellant.

*Gaughan, Sifford, Godwin & Gaughan,* for appellee.

KIRBY, J., (after stating the facts). It is insisted for reversal that the court erred in refusing to allow the parol evidence introduced, explaining the terms of "a turnkey job" under the provisions of the contract, and in giving instructions Nos. 1, 2 and 3 for the plaintiff, and refusing to give requested instructions Nos. 8 and 10 for the appellant.

Instruction No. 3, complained of, told the jury that, "under the terms of the contract and under the evidence herein," that the plaintiff was required to drill the well under the direction and supervision of the Lion Oil and Refining Company, as well as the defendant, and the defendant was bound by any requirements made by a duly authorized representative of the Lion Oil and Refining Company. This instruction was a direct contradiction of the terms of the contract relative to the authority of the representative of the Lion Oil and Refining Company, and the right of the defendant, neither of them having the right to the direction or supervision of the drilling of the well, but only to request the making of a certain test of the formations and oil sand as the drilling proceeded, and, certainly, it was an instruction on the weight of the testimony directing the jury that they were required to find from it that the plaintiff was required to drill under the direction and supervision of said oil company, as well as of the defendant, and was bound by any requirement made by a duly authorized representative of the Lion Oil and Refining Company. This instruction was not only an incorrect interpretation of the contract, but there was no evidence upon which to base it, and it amounted, in effect, to a peremptory direction, and was necessarily erroneous.

If the contract, by its terms, was free from ambiguity, and provided whose duty it should be to furnish the necessary casing in the drilling and completion of the well, then it was the province of the court to construe it, and tell the jury upon whom the duty rested, and his liability for failure to perform it. Under the terms of the contract, it is clear that the parties only contemplated the necessity for using two kinds of casing, surface casing, which was to be furnished by the contractor, who was also to set any other string of casing necessary to be used by the customary methods employed for cementing the same, and to reset same at his own expense, if it should fail to hold. It is equally clear that if oil or gas was encountered at any depth under 3,000 feet in paying

quantities, he was required to complete the well in a workmanlike manner with casing set, cemented, drilled in and bailed at his own cost and expense. When a test was required and the setting of casing, exclusive of surface casing, which the contractor agreed to buy and set at his own expense, the owner was bound to purchase and furnish the contractor with the casing required by the owner to be set by the contractor, who was to pay for all labor and fuel incident to the setting of said casing at any given point, such consideration being included in the contract price. The contract was termed to be "a turnkey job," with the exception of its terms applicable to the different depths of the well, and the prices to be paid at the completion of the well for the different depths, "less and except the cost of all casing except the surface casing, which is to be furnished by the owner."

Each of the parties insist that it was the duty of the other to furnish the casing for shutting off the flow of the artesian water, the contractor, that such casing could not be termed surface casing that he was required to furnish, and the owner, that it was not test casing, the only kind he was required to pay for. The well was a dry hole, and no test casing, as provided by the contract, was required to be furnished, since neither oil nor gas was discovered in sufficient quantities before the well was completed, at the depth required by the contract, to indicate that a test should be made, and none was made. The contractor testified that no test for oil or gas was made when the 12½-inch casing was set in boring down at that point, nor any test by the drill stem, that no oil sand was encountered there, and that the 12½-inch casing, set at 560 feet, and the 10-inch casing, set at 700 feet, was not set for the purpose of making an oil or gas test, "but to cut off water." Under the plain provisions of the contract, unambiguous in the opinion of the writer, the court should have directed the jury that no test casing, within the meaning of the contract, was required or attempted to be set, and that the owner was not liable to the payment of the price of any other casing set for the

purpose of shutting off the artesian water flow, without regard to whether such casing could be classified as surface casing, which the contractor was also obligated to supply. But if the last sentence of the contract quoted, providing that the contract should be "a turnkey job," with the exception of its terms applicable to the different depths of the well, and the prices to be paid at the completion of the well for the different depths, "less and except the cost of all casing, except the surface casing, which is to be furnished by the owner, be regarded as making the contract ambiguous, then the court should have permitted the introduction of parol testimony, explaining the customary local meaning of the words, "a turnkey job," under the terms of the contract, to show who was obligated to pay for the casing, and erred in not doing so. *Batton* v. *Jones,* 167 Ark. 478, 268 S. W. 857; *Alexander* v. *Williams-Echols Co.,* 161 Ark. 363, 256 S. W. 55; 27 R. C. L. 170 (19); *McCarthy* v. *McArthur,* 69 Ark. 313, 63 S. W. 56; *Paepcke-Leicht Lumber Co.* v. *Talley,* 106 Ark. 400, 153 S. W. 833.

If the contract made no provision for payment by the owner for casing necessary to be used in shutting off the flow of artesian water, and, under its terms, the owner was required only to pay for the casing necessary for making a test of the well at its completion or on discovery of oil or gas signs before that depth was reached, warranting the making of such a test, as appears to be the case, then necessarily the payment for any other casing than that for which the owner was bound under the terms of the contract—the test casing—would have to be made by the contractor, who was to furnish all materials and labor and complete the well in a workmanlike manner for the amount stipulated in the contract, in accordance with his agreement. *Ingham Lumber Co.* v. *Ingersall,* 93 Ark. 447, 125 S. W. 139, 20 Ann. Cas. 1002; *Kelly* v. *Zenor,* 150 Ark. 466, 252 S. W. 39; *Smith* v. *Dierks Lumber & Coal Co.,* 130 Ark. 9, 11, 196 S. W. 481; *Polzin* v. *Beene,* 126 Ark. 46-50, 189 S. W. 654; 6 R. C. L., § 364, p. 997.

Instruction No. 2 was abstract and not supported by the testimony. It appears undisputed that no test casing was required to be furnished by the owner. Instruction No. 1 was also erroneous in defining test casing for which appellant was bound to pay under the contract, as all casing necessary to be used in the well other than surface casing, and the error was not cured by giving appellant's requested instruction No. 5, allowing the jury to determine whether the extra casing used and sued for was required for a test for oil or gas, etc., which is in conflict with and contradictory thereof.

Instructions Nos. 8 and 9, requested by the appellant, ought to have been given.

It follows that, because of the errors designated, the cause must be reversed, and will be remanded for a new trial.

It is so ordered.