FORT SMITH BUILDING & LOAN ASSOCIATION *v.* LITTLE.

Opinion delivered June 23, 1930.

1056

1058

*Joseph R. Brown,* for appellant.

*Daily & Woods,* for appellee.

HART, C. J., (after stating the facts). Counsel for the defendant seek to uphold the judgment upon the theory of our cases where it is held that a director or other fiduciary officer of a corporation may be entitled to compensation under an implied contract where ser-

vices clearly outside of his ordinary duty as such director or officer are performed under circumstances authorizing an inference that he was to be paid therefor. *Red Bud Realty Co.* v. *South,* 96 Ark. 281; and *Clifford* v. *Walker,* 180 Ark. 592. In such cases, the question of whether or not there is an implied contract for additional compensation is one of fact rather than of law. We are of the opinion, however, that, under the undisputed facts of the present case, this principle of law has no application.

It is equally well-settled that a person who receives a salary from a corporation is not entitled to extra compensation for the performance of duties within the scope of those pertaining to his office or position, and it is held that he is not entitled to compensation for services outside his regular duties, in the absence of a regular agreement. 14A C. J. 139; and *Carr* v. *Chartier Coal Co.,* 25 Pa. St. 370.

As will appear from our statement of facts, the duties of the secretary are prescribed in § 5 of the by-laws of the corporation. The section expressly provides that the secretary shall be the manager of the association, and shall have charge of the deeds, mortgages, and other securities belonging to the association. It further provides that he shall keep a correct account of all money received and paid out, and that he shall receive all moneys paid to the association. According to his own testimony, he first commenced to collect the rents from the mortgaged premises for the mortgagors and continued to collect them after the mortgages fell due and default was made in the payment of the mortgage indebtedness. The mortgages provided for an assignment of the rents to the association, and that, if default was made in the payment of the indebtedness by the mortgagors, the association should take possession of the property at once and collect all the rents. It thus clearly appears from the defendant's own testimony that the services in collecting rents after default made in the

payment of the mortgage indebtedness was in his character of secretary and manager of the association. His services were of the character which as manager he would ordinarily be expected to perform for his company. In addition, it will be noted that the by-laws expressly provided that the secretary should have charge of all the mortgages of the association and should keep a correct account of all money received and paid out. In another sentence, it provides that he shall receive all money paid to the association. Therefore, his own evidence shows that the rents collected by him after the default made by the mortgagors in the payment of their mortgage indebtedness were collected in his capacity of secretary and manager of the association, and were such duties as the by-laws expressly provided that he should perform. He was paid a salary annually of $1,800 for his services as secretary and manager of the association. The commissions deducted from the rents he collected amounted to $105, and the plaintiff was entitled to judgment for this amount.

Proof of the custom of other associations in charging commissions on rents collected was not admissible because the contract was unambiguous, and the proof would have the effect to defeat the express terms of the contract. *Batton* v. *Jones,* 167 Ark. 478; and *Ozark-Badger Co.* v. *Roberts,* 171 Ark. 1105.

Again, the defendant retained $20 for the commission claimed to be due on investment stock sold to Otis Wingo. In his letter subscribing for the stock, Wingo stated that he wished the contract for the new stock to begin on January 1, 1929. On December 31, 1928, Wingo sent a telegram to withhold his subscription for new stock, and this was done. In his letter of February 16, 1929, Little wrote to Wingo to let him know whether he kept the stock, thereby recognizing that Wingo had a right to cancel his subscription before the first day of January, 1929. The contract provided that Little was to receive four dollars per thousand on all unpledged

investment stock sold. By the language used, it was contemplated that an actual sale should be made, and that payment to Little should be had from the price obtained. Until the price of the stock became payable or the association refused to issue it to Wingo, Little could not demand any commission for selling the stock or maintain an action for breach of the contract with him on the part of the association. *Vaughan* v. *O'Dell*, 154 Ark. 165.

Moreover, the defendant was not entitled to retain either the commissions for rent collected or for selling the investment stock for another reason. According to the testimony of Leon A. Williams, a vice president of the association, at the first meeting of the board of directors after Little resigned as secretary and manager, the board of directors gave Little a $1,000 bonus for the services he had rendered the association. This bonus was accepted by Little, and must be deemed to have been given in payment of any unusual or extraordinary services which had been performed by him while he was secretary and manager of the corporation.

It follows that the court erred in not instructing a verdict for the plaintiff. For that error the judgment must be reversed, and, inasmuch as the case has been fully developed, judgment will be entered here in favor of the plaintiff against the defendant for the sum of $125, with six per cent. interest from this date. It is so ordered.