NATIONAL LUMBER & CREOSOTING COMPANY *v.* MULLINS.

4-2951

Opinion delivered April 3, 1933.

*James D. Head,* for appellant.
*Danaher & Danaher,* for appellee.

MEHAFFY, J. The appellee, J. F. Mullins, a contractor, entered into a contract with the Highway Com-

mission for the construction of certain bridges on the State highway in Lafayette and Columbia counties. He, as principal, and the Consolidated Indemnity & Insurance Company as surety, entered into a bond as provided by act 368 of the Acts of the General Assembly of 1929, conditioned as prescribed by said act. The appellant furnished material of the value of $5,739.26. This suit was brought in the Jefferson Chancery Court against the contractor and the surety company for this amount.

Mullins filed answer, denying the indebtedness and denying that final estimate had been made, and alleging that, under the terms of the contract, he was not to pay for the material until he had received payment from the Highway Department, and that no such payment had been received. He further alleged that it was a general and uniform custom well known to the appellant, and was a part of the contract, that the purchase price of material would not become due until the contractor had collected from the Highway Department.

The surety company answered denying liability, and alleging that the claim was barred because suit was not begun until more than six months after the completion of the work; that it was not liable on the bond because the Commission had breached the contract by failing to pay Mullins, thereby preventing him from paying appellant. The surety company also alleged that the contractor was not to pay for material until he received payment from the Highway Department, and that this payment had not been made, and that therefore there was nothing due to appellant. It also denied all the material allegations in the complaint.

The Highway Department answered, alleging that final voucher had been issued and turned over to the bonding company; that it had not been paid and was still in the hands of the bonding company; the voucher issued and turned over to the surety company was for $6,486.11.

The question for our consideration is whether, under the contract, the amount owing to appellant was due in thirty days after it was furnished, or whether it was due after the Highway Department had paid the con-

tractor. The following, which was rendered to Mullins, the contractor, was introduced in evidence:

"May 22, 1931
"Diet. 5/21/31

"Quotation
"No. T-57

"Subject: Inquiry treated lumber and piling for Arkansas Highway Project 1133, for delivery Waldo, Lewisville, Buckner and Stamps, Arkansas.

"Mr. J. F. Mullins,
"Pine Bluff, Ark. .

"Dear sir:

"To confirm 'phone conversation of today, we quote below f. o. b. cars above points—terms thirty days net, subject to your acceptance within thirty days—the following yellow pine piling, and yellow pine and west coast fir lumber—all treated in accordance with Arkansas State Highway specifications:

"12 SYP Piles 26'
"22            28'
"24            30' $.31½ B. Ft.
"68            32'
"24            34'

"Approx. 70,000 B. Ft. treated Fir & YP lbr., framed, $62.50 MFBM.

"If you should take over this project, we sincerely trust that our quotation will enable you to favor us with your order. However, if the award goes to another, will appreciate your advising us as to the contractor's name and address.

"CC-WW Snodgrass
"F. J. Williams

"Very truly yours,
"National Lumber & Creosoting Co.
"By:"

This quotation bears the following notation in pen and ink:

"Pine Bluff 6/6/31
    W.L.M.

"Saw Mr. J. F. Mullins this morning, and he is giving us this order, and is having correct list made at Little Rock and mail order in to us Monday or Tuesday.

"F. J. W."

Mullins, the contractor, testified that he talked to Mr. Williams, the representative of appellant, and that nothing was said about the payment, and in fact nothing was discussed but the price, nothing was said in their conversation about when it was to be paid. Mullins also testified that on another job he had had a conversation with a different agent of appellant, and told the agent that he had always bought his material to be paid for as he received his money, and that the agent said that this was satisfactory; that he, Mullins, expected to pay when he received his money as the work progressed; that he had received no money, but merely warrants.

We do not set out the entire testimony of Mullins, but he testified positively that in this contract there was nothing said about custom or anything else except the price. There was some evidence about the contractor not being able to pay until he received money from the State.

M. K. Orr testified that the custom had been that the money had to come from the job to pay for the material, and that all companies understood that; that when estimates were paid the contractor paid the materialman; that this had been the custom.

Mr. Schnable also testified to the custom, his evidence being substantially the same as that of Orr and Mullins.

F. J. Williams, representative of appellant, testified that it had never been appellant's custom to furnish materials and wait until the contractor was paid; that their contracts always had been made payable at times definite and certain.

Orr, being recalled, testified that, although the quotation carried a 30-day clause in it, the understanding was that the money was to come out of the job. He also testified that the State first fell behind in its payments in October or November.

Mullins, being recalled, testified that, in the conversation discussing the buying of these materials, there

was no discussion as to what dates or when payments should be made; that was not discussed in the last order, but it was in the first order; that that conversation related, not only to that job, but to future jobs, and that in this contract there was nothing definite about the time of payment; the conversation was merely about prices, and that was all that was discussed. There was some correspondence between the parties, but it is unnecessary to set it out here.

The appellant introduced the contractor's bond and warrant for the final estimate which had been given to the surety company, and introduced copy of the statement of May 22, 1931, showing that the terms were 30 days net. The evidence also shows that Mullins said that if the price was satisfactory he would give the appellant the job.

It is not contended by the appellees that anything was ever said about when the material should be paid for. Mullins does testify that at some other time he bought some material from an agent named Brown, and discussed the custom, and that it was understood that that applied to future contracts as well as the one made with Brown. He does not say when this contract with Brown was made, and, so far as the record is concerned, it may have been years before.

After the evidence was introduced, the court found that appellees were indebted to the appellant in the sum of $5,739.26 with interest at the rate of 6 per cent. per annum from 30 days after the several dates of the itemized statements, but the court found that under the contract the indebtedness was to be paid out of the amount due from the State of Arkansas, which had not been paid. The court also found that the voucher for the last estimate, $6,486.11, was issued and delivered to the appellee surety company.

The court rendered judgment in favor of the appellant for the amount sued for, but provided in the decree that no execution should issue on the judgment; that the surety company should assign the voucher to the clerk of the court, who was appointed receiver, to hold the voucher or any other evidence of indebtedness issued

by the State in lieu thereof, and, when the amount has been paid, the receiver should then pay the plaintiff, and if the amount collected by the receiver was not sufficient to pay the plaintiff, then plaintiff should have judgment for the deficiency against the contractor and surety company.

The National Lumber & Creosoting Company prosecutes an appeal to reverse that part of the decree which holds that the appellant was to be paid out of the amount due from the State, and that no execution should issue upon the judgment, and that part that appointed the clerk receiver, and directed him to pay appellant when he collected on said warrant. Appellant insists that it was entitled to a judgment against the contractor and surety company, and entitled to have execution on said judgment. .

The only question for our consideration is whether the cause of action accrued within thirty days after the material was furnished, as stated in the letter or quotation of May 22, 1931, or whether appellant was bound by the custom, and the amount was not due and collectable from the contractor until the State had paid the contractor.

The appellees insist that the amount was not due when suit was brought, and also insist that the claim was barred by the statute of limitations, and the court stated that the amount was due within thirty days, as stated in the quotation, and gave a judgment for interest from that date. If the appellee's theory is correct, the suit could not have been maintained at the time it was brought, because no cause of action would have accrued until the State paid the contractor; and, if the theory of the appellees was true, the bond would have been worthless. There would have been no reason to give the bond, and no liability thereon. If the amount was not due until the State paid, and the State did not pay within the time limited by the statute to bring suit against the contractor and his surety, there would have been no reason to give the bond at all.

The rule that parties to a contract are bound by custom or usage is based on the assumption that the parties contracted with reference to the custom. In the instant case the only statement ever made between the parties with reference to the time when the claim became due was the statement in the written memorandum that it was due in 30 days, and in order to be binding a custom must be reasonable. There is not only no evidence in this case tending to show that anything was said about the custom when the contract was made, but the custom contended for by the appellee would be unreasonable because it would make it impossible for the material furnisher to recover on the bond.

A custom applicable to trade or business is not binding on the parties if there is either notice or contractual stipulation that the transaction is without regard to the custom. Evidence of usage or custom is not admissible to vary or contradict the terms of a plain, unambiguous contract. Where the writing states that the claim will be due at a certain time, and no objection is made to this, and nothing said about custom or usage, the claim will become due at the time mentioned in the written instrument.

Appellees contend that the custom became part of the contract, and that all the authorities sustain this proposition, and cites note 28 in 17 C. J. 501. There are several notes on this page, but they are all to the effect that the evidence of custom can neither contradict, destroy, nor modify what is otherwise plain. They are, however, all to the effect that the evidence of custom is admissible in the absence of express stipulations, and where the contract is silent, but it is not admissible to contradict or vary the terms, but only for the purpose of explaining and supplying details. Appellee also calls attention to 17 C. J. 453, and 503. On page 453 it is stated: ''Further, a loose and variable practice will not be allowed to control the rights of the parties, nor will an alleged usage, which leaves some material element to the discretion of the individual. But it is not essential that the custom be used by everybody and at all times.

A usage or custom of trade to which no limit is assigned to its extent is bad and therefore will not be given effect by the courts.''

It is stated on page 503, cited by appellees, that evidence on the question of terms, quantity, and price is admissible, but the text there clearly shows that it is admissible for explaining ambiguous terms, and is never admissible to contradict the terms of a written contract.

Appellees also call attention to the case of *Robinson* v. *United States,* 13 Wall. 363, but the opinion in that case says: ''Parties who contract on a subject-matter concerning which known usages prevail by implication incorporate them into their agreements if nothing is said to the contrary.''

But, if anything is stated to the contrary, the rule does not apply. The case of *Alexander* v. *Williams-Echols Dry Goods Co.,* 161 Ark. 368, 256 S. W. 55, announces the same rule, that is, that the usage is incorporated into the agreement if nothing is said to the contrary.

It is next contended that this contract was verbal. It is wholly immaterial, we think, whether it is regarded as a written or oral contract. The important question is the intention of the parties, and that is to be arrived. at by a consideration of the entire contract. The contract expressly provides that the material shall be paid for within 30 days, and this is not contradicted anywhere.

This court has many times decided that evidence of custom and usage is admissible where the contract is silent and ambiguous. On the other hand, this court has always held that usage and custom cannot be invoked to defeat the express terms of a written contract. The usage and custom is applicable only where the contract is silent or its terms ambiguous. *Batton* v. *Jones,* 167 Ark. 478, 268 S. W. 857; *Southern Coal Co.* v. *Searcy Transfer Co.,* 152 Ark. 471, 238 S. W. 624; *Ft. Smith Bldg. & Loan Ass'n* v. *Little,* 181 Ark. 1055, 29 S. W. (2d) 291.

We think the evidence in this case is insufficient to establish the fact that this contract was made with reference to the usage and custom testified about.

That part of the judgment of the lower court directing the receiver to hold the voucher or any other evidence of indebtedness issued by the State in lieu thereof, and when the amount has been paid, the receiver should then pay the same to appellant, is affirmed.

There is no dispute about the amount of the indebtedness, and the lower court entered judgment for $5,739.26. The decree of the court, however, holding that execution should not issue and that payment was not to be made until the State paid the contractor, is reversed, and judgment entered here for the amount sued for.